# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 18-120 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| JOHN OWINGS | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Pending before the Court is a motion in limine to exclude the opinions of Social Security Administration ("SSA") Special Agent Suzanne Guenin ("Guenin"). Record Document 50. In this motion, the Government seeks to prohibit the Defendant, John Owings ("Owings"), from questioning Special Agent Guenin about opinions she expressed in an email to SSA employee Raynelle Branch ("Branch"). Special Agent Guenin's opinions related to SSA's ongoing investigation of Owings for receipt of social security disability benefits to which he allegedly was not entitled. The defense opposes the Government's motion. For the reasons expressed below, the motion in limine is **GRANTED**.

At issue here are two emails between Special Agent Guenin and Branch regarding the investigation into Owings's receipt of social security disability payments.[1] One string of emails was sent back and forth on June 21, 2017, while the other was between June 21, 2017 and July 24, 2017. Contained in both sets of emails is the same message, sent from Special Agent Guenin to Branch at 11:20 a.m. on June 21, 2017. There, Special Agent Guenin states, in part: "We are not going to be able to pursue criminal prosecution

---

[1] For reference, the two emails are attached to this ruling and made a part of the record.

because there are too many issues that affect jury appeal in this case, including conflicting and confusing letters from the SSA." The Government's motion in limine seeks to prevent the defense from questioning Special Agent Guenin about this statement, as her opinions about the strength or appeal of the case and/or her view of the clarity of the SSA documentation sent to Owings prior to the investigation are irrelevant. Just as a prosecutor could not ask an investigator to testify about how strong the criminal case is against a particular defendant or express an opinion that the evidence is clear and unambiguous, nor can the defense question an investigator about her perception of the weaknesses of a case or whether the case should have been prosecuted at all.

At the pretrial conference of this matter, the defense agreed with the Government that the aforesaid topics would not be permitted. The Court's minutes memorialized that concession: "[t]he defense agrees that it would be improper to ask the agent her opinion on the strength or jury appeal of the case. However, it does intend to probe with that agent, or other Social Security Administration ("SSA") personnel, the alleged conflicting or contradictory nature of correspondence sent by SSA to Owings." Record Document 51, p. 4. Without acknowledging it made that concession to the Court, the defense now broadens the scope of the inquiry by arguing that all of the emailed content is admissible and/or relevant. Thus, the question is no longer as limited as that initially posed by the Government (is Special Agent Guenin's statement that "We are not going to be able to pursue criminal prosecution because there are too many issues that affect jury appeal in this case, including conflicting and confusing letters from the SSA" admissible); rather, the

question is now to what extent can any of the emailed content between Special Agent Guenin and Branch be admitted into evidence.

As previously mentioned, the defense has already agreed that Special Agent Guenin's opinions are inadmissible. Owings has provided no explanation for his change in position, nor has he offered a cogent reason why Special Agent Guenin's opinions are now relevant and admissible. The Court agrees with the Government that Special Agent Guenin's opinions are inadmissible. Thus, the defense is barred from questioning Special Agent Guenin or Branch, or other SSA personnel, about the opinions expressed in the email, including but not limited to, opinions about the strength of the case, the appeal of the case to a jury, and the ambiguity of SSA correspondence sent to Owings.

As noted earlier, the defense enlarged the inquiry before the Court by urging the Court to find that the entire email chain is admissible. However, the defense took a scattered approach in its quest for admissibility. Indeed, Owings's opposition to the motion in limine commingled and conflated arguments about relevance and admissibility. The Court will try to separate and address those two very different concerns and attempt to provide general parameters to guide the parties as they prepare for trial.

The Court finds the most important issue is admissibility. While the defense focused primarily on the relevance of the emails, that is a secondary inquiry in the Court's mind. To be sure, not all relevant evidence is admissible at trial. Framing something as relevant does not render it admissible.

Owings provided only one basis for the admissibility of the emails. He contended that they are admissible as an admission by a party opponent per Federal Rule of Evidence 801(d)(2),[2] as Special Agent Guenin and Branch worked for an agency of the United States. While Owings did not identify the particular subsection of Rule 801(d)(2) through which he intends to introduce these alleged party-opponent statements, the Court will presume it is Rule 801(d)(2)(D), which governs statements made by a party's employee on a matter within the scope of that relationship and while the relationship existed. The Fifth Circuit has commented that "other circuits have declined to extend Rule 801(d)(2)(D) to statements made by government agents, especially in criminal trials" because individual agents cannot bind the sovereign. United States v. Garza, 448 F.3d 294, 299 (5th Cir. 2006); see also United States v. Martinez-Saavedra, 372 F. App'x 463, 464 (5th Cir. 2010) ("We have previously declined to apply Rule 801(d)(2)(D) to a statement made by a government agent because the statements of individual agents do not bind the sovereign except in rare circumstances."). The Court will not allow Owings to introduce these emails through Rule 801(d)(2)(D) as the admission of a party opponent.

---

[2] Federal Rule of Evidence 801(d)(2) provides that a statement is not hearsay if it is offered against an opposing party and: "(A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy." F.R.E. 801(d)(2).

The defense also argued that the emails contain <u>Brady</u> material which "trumps any alleged statutory privilege . . . ." Record Document 54, p. 1.[3] The Court has no knowledge of the Government's assertion of any statutory privilege in this case and thus does not understand the defense's contention. The Court is unsure of whether Owings's invocation of <u>Brady</u> signals his belief that the emails are admissible, or alternatively, whether they are merely relevant to the defense. In any event, simply labeling something as <u>Brady</u> does not render it admissible at trial.

<u>Brady</u> requires that the prosecution disclose exculpatory and impeachment evidence to the defendant in advance of trial. <u>Felder v. Johnson</u>, 180 F.3d 206, 212 (5th Cir. 1999). The information "must be evidence that is material either to guilt or to punishment. Evidence is material only where there exists a reasonable probability that had the evidence been disclosed the result at trial would have been different." <u>Id.</u> (internal marks and citations omitted). In the Fifth Circuit, inadmissible evidence may be considered material for <u>Brady</u> purposes. <u>Id.</u> However, that principle forecloses Owings's suggestion that <u>Brady</u> evidence is automatically admissible. If <u>Brady</u> material includes both admissible and inadmissible evidence, then clearly, inadmissible evidence is not transformed into admissible evidence just because it is <u>Brady</u>. The Court declines Owings's invitation to deem the SSA emails admissible simply because he contends they contain <u>Brady</u> material.[4]

---

[3] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[4] The Court does not opine on whether there is <u>Brady</u> material contained in those emails.

Aside from Rule 801(d)(2) and <u>Brady</u>, Owings did not identify any other route for the admissibility of these emails. Instead, he focused on the relevance of the emails to his case, which the Court will now address. The defense asserted the emails are relevant because they "relate to the quality of the investigation, the potential *mens rea* of Dr. Owings or the lack thereof, and potential biases of Branch and Guenin, issues which go to the core of the defense." Record Document 54, pp. 1-2. By way of example, Owings cites to the following statement from Guenin:

> We are not going to be able to pursue criminal prosecution because there are too many issues that affect jury appeal in this case, including conflicting and confusing letters from the SSA. However, I am going to speak to the OIG legal department to see what civil remedies we have. He has indicated he is willing to repay what he owes, so we will try to make that happen. Please let me know once the o/p calculations are complete. And MOST IMPORTANTLY, do NOT enter into any repayment agreement with him. If we are able to pursue this civilly, there will be a fine included. If the SSA enters into a repayment agreement with him, we will not be able to pursue it civilly. Please let me know if you have any questions.

Owings asserted that Guenin's directive that SSA not enter into any repayment agreement with him–which is repeated in another email[5]–is relevant to refute the Government's argument that Owings failed to respond to SSA's attempts to discuss the overpayment with him.

Again, the emails are inadmissible hearsay. However, that does not shield the facts contained therein from examination at trial. The Court sees the emails as the origin or source for permissible areas of exploration, so long as the inquiries are relevant and the

---

[5] In an email dated July 24, 2017 at 3:05 p.m., Guenin states to Branch, "please remember: NO repayment agreement."

questioning comports with the rules of evidence. For example, the defense may question the SSA personnel about the fact that Owings was not allowed to enter into a repayment agreement to counter the suggestion or implication that Owings ignored the SSA's entreaties to communicate about or resolve the overpayment.[6] The defense may review the SSA documentation with an SSA witness and have that witness compare and contrast the statements. The attorney may ask whether a particular statement said "x" but another statement said "y," and he or she may seek an explanation of the differences and/or discrepancies between the two. The decisive element and the focus here is on <u>facts</u>, not opinions, conclusions, speculation, or prior statements. Neither party may ask whether a witness believes "x" and "y" are straightforward or confusing. A witness may not be asked how she would have understood the SSA documentation if she stood in Owings's shoes. A witness may not be asked whether Owings should have been prosecuted criminally or whether he should have been permitted to repay the overpayment. The above constitute argumentative contentions more appropriately handled in closing arguments by the attorneys, not in the direct or cross-examination of a witness.

A last point the Court wishes to emphasize, though neither party raised it, is that the defense will not be permitted to use another witness to introduce the self-serving hearsay statements Owings made during his interview with Special Agent Guenin. Special Agent Guenin's email recounts her meeting with Owings and states, among other things,

---

[6] However, the parties may not cross the line into questions regarding why a criminal prosecution was instituted in lieu of a civil suit or which alternative is best in the witness's opinion.

that he professed he is no longer as organized as he once was, that he became overwhelmed by a tax problem and subsequently forgot to report his work to the SSA, and that he assumed if he ignored the SSA letters, the checks would halt on their own. He also allegedly acknowledged the overpayment and offered to repay the money. As the Fifth Circuit has explained, "[w]hen offered by the government, a defendant's out-of-court statements are those of a party opponent and thus not hearsay. . . . When offered by the defense, however, such statements are hearsay (the defendant may, of course, reiterate the out-of-court statements on the stand if he chooses to testify)." United States v. Sanjar, 876 F.3d 725, 739 (5th Cir. 2017). Pursuant to Rule 801(d)(2)(A), the Government may use Owings's statements as statements of a party opponent, however, Owings may not, on direct or cross, introduce any of his own out-of-court statements because they are inadmissible hearsay. If these explanations are to come into evidence, Owings must take the stand and testify.

For these reasons, **IT IS ORDERED** that the Government's motion in limine [Record Document 50] is **GRANTED**.

**THUS DONE AND SIGNED** this _____ day of January, 2019.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

-8-